Scott, J.
The original case in which the judgment here brought under.review was rendered, was a proceeding under the act “ for the maintenance and support of illegitimate children,” passed April 3, 1873- (70 Ohio L. 111.) It was commenced by complaint made by defendant in error, December 13, 1873, before a justice of the peace, in which she charged the plaintiff in error with being the father of a bastard child, of which she had been delivered on the 22d day of March, 1873. At the trial of the case in the court of common pleas of Miami county, in February, 1874, the following state of facts was shown by the testimony of the complainant, and was uneontroverted: The complainant was married to one John B. Gill, on the 26th •of March, 1869, and thenceforward continued to be a feme covert till the 12th day of November, 1873, when, in a pro-needing against, said Gill, for that purpose, she obtained a decree of divorce. The child in question was begotten in June, 1872, and born March 22,1873, during her coverture. The court instructed the jury that if the proof clearly showed, beyond a reasonable doubt, that the husband of ■complainant had no access to her for more than two years immediately before the birth of the child, it was a bastard; and if, at the time of making her complaint in bastardy, she had been divorced from her husband, and if the jury were *628 satisfied, from the evidence, that defendant was the father of the child, they should find him guilty. He was accordingly found guilty, and was, by the court, adjudged to be the reputed father of the child, and was charged for its maintenance, in the sum of $250. On petition in error to reverse this judgment, it was.affirmed by the district court.
Of the questions raised by the assignment of errors here, we find it necessary to consider only one.
Hid the state of facts shown by the testimony of the complainant authorize the proceedings in bastardy which she instituted, or bring her ease within the provisions of the statute ? We think the act in question was intended to provide for no such case. Its first section commences thus: “When any unmarried woman, who has been delivered of, or is pregnant with a bastard child, shall make complaint thereof in writing,” etc. Looking to this phraseology, and to the purpose of the act, as shown by its title, we are very clearly of opinion that it was not intended to invite or authorize an inquiry into the legitimacy of children begotten and born in lawful wedlock, whenever a heartless mother might desire to bastardize them at the expense of her own infamy. The language of the act is substantially thus: “ When any unmarried woman has been delivered of, or is pregnant with a bastard child, and shall make complaint thereof,” etc. In either form of expression, the delivery and the pregnancy, as well as the making of complaint, are predicated of an unmarried woman. The children of married women are not bastards within the meaning of this act. The text books of the-common law define a bastard as being-“one that is begotten and born out of lawful matrimony.” 1 Bl. Com. 454; 2 Kent, 208. And this statute, by limiting complaints under it to unmarried women, evidently proceeds on the same idea.
It was intended to provide for the support and maintenance of an unfortunate classof children, whose condition of illegitimacy would be apparent and unquestionable, by reason of their being hegotten and born out of wedlock. The statute authorizes the complaint to be made either during *629 pregnancy or after delivery. If made during pregnancy, it is certain that the pregnancy alleged must be that of an unmarried woman, and if not made till after delivery, it is equally certain that the complainant must still coutiuue tobe unmarried. But no complaint could have been made in this ■case either during pregnancy, or for eight months after delivery. The child was, during all this time, the innocent and honest child of a married woman; and in any proceeding under this act, would have been conclusively presumed to be legitimate. The subsequent divorce of the mother •may have changed her status, but not that of her child. The decree gave her the capacity to acquire future rights under this act, but could have no retroactive effect to change the -character of past transactions. It dissolved the'marital relation, but did not bastardize the issue begotten and bom during its continuance.
The judgments of both the courts below must be reversed, .and the complaint dismissed at the costs of the complainant.

Judgment accordingly.